ATTORNEY FOR RESPONDENT
Thomas F. Godfrey
Michigan City, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Aaron Johnson, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 46S00-1512-DI-694

FILED

Oct 16 2017, 2:03 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE MATTER OF:

DOUG BERNACCHI,

*Respondent.*

Attorney Discipline Action
Hearing Officer Sheila M. Moss

**October 16, 2017**

**Per Curiam.**

We find that Respondent, Doug Bernacchi, committed attorney misconduct by incompetently representing a client, charging an unreasonable fee, improperly using and splitting his fee with a nonlawyer assistant, and attempting to obstruct the disciplinary process. For this misconduct, we conclude that Respondent should be suspended for at least one year without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 1990 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

The Commission filed its "Verified Complaint for Disciplinary Action" against Respondent on December 14, 2015, and later amended that complaint. On August 10, 2016, Respondent was deposed under oath and admitted to the allegations in the amended complaint. By joint motion of the parties, the final hearing in this matter was converted to a hearing solely on the issue of sanction. That hearing was held on December 19, 2016, and following the submission of proposed findings by the parties, the hearing officer issued her report on June 1, 2017.

Respondent was hired by "Client," who was the guardian of her grandson, to represent her in a pending child support matter against the grandson's parents, one of whom was Client's adult son. A Rule to Show Cause against the parents was pending when Respondent took over the representation.

During this time, Mario Sims was an independent contract paralegal working for Respondent. Sims is not a lawyer.[1] Respondent entered into a written fee agreement with Client calling for an $800 "non-refundable" retainer. Respondent instructed Client to pay this money in full to Sims and indicated he would collect his portion from Sims. Client was directed to raise any questions she had about the case with Sims.

Respondent filed appearances on behalf of both Client and her son, who was an adverse party. At the first hearing on the Rule to Show Cause, which ended up being continued, Respondent told the trial court he was there to represent the son. At the second hearing, Respondent told the court that he was representing Client and that he had erred in stating otherwise at the first hearing. However, Respondent proceeded to argue against the son being made to pay child support, telling the court among other things that the son was bedridden and unable to work. At the conclusion of the second hearing, the court dismissed the Rule to Show

---

[1] It appears this person is the same Mario Sims involved with several dozen appellate case numbers, most of which appear to relate, directly or indirectly, to that individual's 1994 convictions and subsequent incarceration for burglary, rape, and criminal deviate conduct. *See, e.g.,* Sims v. Bramer, 827 N.E.2d 1187 (Ind. Ct. App. 2005).

Cause, citing among other things the confusion over party representation. Client did not appear at either hearing, and Respondent has given inconsistent explanations for her failure to appear, both to the trial court and to the Commission.

After the second hearing, Respondent informed Client he had told the Court her son was on his deathbed and should not be obligated to pay support. Client instructed Respondent to go back to court and correct this, but Respondent refused. Client then requested a refund from Respondent and filed a grievance against him with the Commission. Respondent eventually refunded the fee about two years after Client first requested it. Both before and after issuing the refund, Respondent and others acting on Respondent's behalf repeatedly called Client and attempted to persuade Client to withdraw the grievance in exchange for the refund. Respondent also contacted multiple members of the Commission directly in an attempt to have the disciplinary investigation dismissed, notwithstanding Respondent's awareness that the Commission members were represented by counsel.

Client eventually lost the home she shared with her grandson after she was unable to secure the child support payments from her grandson's parents.

**Discussion**

Respondent has filed a petition for review, challenging the hearing officer's findings that he committed misconduct. However, Respondent admitted under oath the truth of the allegations against him and joined in a request before the hearing officer to be heard on the issue of sanction alone. The proposed findings Respondent tendered to the hearing officer likewise acknowledged his violation of the rules as charged. Accordingly, these arguments are waived.[2]

---

[2] Implicitly acknowledging this, Respondent (by his current counsel) also briefly attempts to raise an ineffective-assistance-of-counsel claim with respect to his former counsel's purported advice to admit the charged violations and proceed to a hearing on the issue of sanction alone. Respondent cites no authority supporting the availability of such a claim in attorney disciplinary proceedings. Further, Respondent, who was represented by his current counsel during the final hearing and at all points thereafter, did not raise any issue during the hearing or in his proposed findings regarding former counsel's actions; nor did Respondent develop, or attempt to develop, at the final hearing any evidence in support of such a claim.

Respondent further contends the hearing officer erred by not allowing Sims to testify during the final hearing to rebut Client's credibility, but this argument also is unavailing. The hearing officer excluded Sims from testifying because Respondent had dissuaded the Commission from deposing Sims after Respondent admitted the violations and had not included Sims on the witness list for the final hearing. Further, Respondent made no offer of proof during the hearing beyond indicating Sims would testify "for character only" and "not to rebut anything that was done today[.]" (Tr. at 138-141).

Based on the foregoing, we conclude that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.1: Failing to provide competent representation.

1.5(a): Making an agreement for, charging, or collecting an unreasonable fee.

5.3 and Guideline 9.1: Using a nonlawyer legal assistant who was not an employee.

5.4(a): Improperly sharing legal fees with a nonlawyer.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

Turning to the issue of sanction, we agree with the hearing officer that Respondent's lack of prior discipline is a mitigating factor. However, we are less persuaded by some of the hearing officer's other findings in mitigation. The hearing officer found that Respondent sought stress counseling and has taken on partners in his practice to oversee his work, but as the Commission correctly observes in its own petition for review, there was no evidence introduced during the hearing that would support these findings. The hearing officer also found that Respondent "has apologized for his conduct and appears remorseful" for the harm his misconduct caused to Client and her grandson, but the nature of the arguments advanced by Respondent before this Court calls into question the sincerity of those expressions. And while Respondent introduced into evidence two letters attesting to his character and reputation, for reasons described below we do not assign these letters much mitigating weight.

On the other side of the ledger in this case are significant aggravating factors. As found by the hearing officer, Respondent has substantial experience in the practice of law, he

4

committed multiple and diverse acts of misconduct, he was dishonest with the trial court, and he improperly attempted to persuade Client to withdraw her grievance in exchange for a refund. (Report at ¶¶ 29-31). But these observations only begin to tell the story. In the underlying case, Respondent not only engaged in a blatant conflict of interest, appearing on behalf of both the party seeking support and the party resisting support, he seems to have been completely unaware of who he was actually representing or why this was a problem. Respondent not only made false statements to the trial court, the substance of those false statements were largely adverse to Client. And Respondent not only improperly used and shared fees with an unsupervised paralegal, he did so in a manner that made his own role in the representation secondary to that of the paralegal. Indeed, Respondent testified at the final hearing he had never even met Client. (Tr. at 125).

Respondent's conduct during these disciplinary proceedings also is deeply troubling. Respondent not only harassed Client about the grievance she filed against Respondent, he induced others to do the same. The letters Respondent inappropriately sent to the Commission's membership inaccurately stated that the disciplinary investigation was baseless and grounded in falsehoods propounded by Client and by the Commission's counsel. Respondent also filed a frivolous Notice of Tort Claim against the Commission's counsel alleging the investigation was being pursued in bad faith, and Respondent attached to that tort claim notice an affidavit issued by a purported acquaintance of Respondent, an affidavit Respondent later acknowledged was false. Less extreme but nonetheless worrisome, many of Respondent's responses to questions propounded by the Commission during its investigation were at best nonsensical and at worst obstreperous,[3] and the hearing officer found "Respondent exhibited several instances during the

---

[3] By way of illustration, when asked whether Respondent and Sims share or have joint access to a business bank account, Respondent wrote the following:

> Never, EVER would I do that or consider it with any non-lawyer. Who would do that, you? Perhaps a Valparaiso Law School lawyer or an Indiana University lawyer? Some persons who were having weird sexual relations or a relationship? I hope that is not being questioned of me. . . . [W]e are both married men[.]
>
> . . . Please, I am just a bit offended to even answer such nonsense. I hope I have made myself clear. NO joint accounts, no keys, no private Personal Identifying Information on most matters, or just a name or address, no access to my account by Mr. Sims, or any

hearing[ ] of an inability to comprehend simple questions or to follow his own train of thought to conclusion. The Respondent contradicted himself and appeared flustered during the direct of his attorney." (Report at ¶ 36).

The Commission urges us to suspend Respondent for at least two years without automatic reinstatement. Respondent, who devotes only a single sentence of his 17-page sanctions brief to the issue of sanction, urges that a reprimand or short suspension be imposed. The balance of considerations outlined above persuade us that a significant period of active suspension is warranted and that Respondent should be required to undergo the reinstatement process before resuming the practice of law.

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.1, 1.5(a), 5.3 and Guideline 9.1, 5.4(a), and 8.4(d). For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than one year, without automatic reinstatement, beginning November 27, 2017. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.

---

other stranger on Earth, or any aliens, for that matter. My garbage does not include P.I.I. and is not blowing in the ally [sic].

(Comm'n Ex. 6 at 24-25).